IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

MANDIE K. BROWN,      )
            )
   Plaintiff,      )  TC-MD 111014N
            )
   v.         )
            )
DEPARTMENT OF REVENUE,   )
State of Oregon,       )
            )
   Defendant.     )  **DECISION**

Plaintiff appeals Defendant's Notice of Deficiency Assessment, dated August 5, 2011, denying her claimed Working Family Child Care Credit (WFC) and Child and Dependent Care Credit (CDC) for the 2010 tax year. A telephone trial was held May 9, 2012. Beverly A. Stone, Licensed Tax Consultant, appeared on behalf of Plaintiff. Plaintiff testified on her own behalf. Karen Patrick (Patrick), grandmother of Plaintiff's son, testified on behalf of Plaintiff. Kevin Cole (Cole), Tax Auditor, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 8 and Defendant's Exhibits A through D were received without objection.

## I. STATEMENT OF FACTS

Plaintiff originally claimed $8,270 in child care expenses for the 2010 tax year. (Ptf's Compl at 1.) She revised her claim to $6,965 because two receipts, for March and May 2010, are now missing. (*See* Ptf's Ex 7-1.)

Plaintiff testified that, in 2010, she was unemployed from January 1, 2010, through the end of May 2010 and from on or about September 20, 2010, through the end of the year. She testified that, during those periods of unemployment, she received weekly unemployment benefits from the Oregon Department of Employment, totaling $4,516 for 2010. (Ptf's Exs 2; 3.)

/ / /

Cole testified that Defendant does not dispute the amount of unemployment benefits that Plaintiff received or the approximate periods of her unemployment in 2010.

Plaintiff testified that, from about June 1, 2010 through about September 20, 2010, she was employed by NW Tax Advisory Group, Inc. She testified that she was employed full time in June, July, and part of August 2010, and part time in part of August and September 2010. Plaintiff testified that her employer knew that her position would be cut in September 2010 and reduced her hours to part time so that she could train a new employee and also begin searching for new employment. Cole testified that he contacted the Oregon Department of Employment and confirmed that Plaintiff was employed full time in June 2010 and during the third quarter of 2010. He testified that no other employment for Plaintiff was reported for 2010.

Plaintiff testified that, during periods of unemployment in 2010, she was actively seeking employment. She testified that she reported four or five days each week to one of two WorkSource Portland Metro offices to seek employment and receive assistance related to her job search, including reviews of her resume; access to the iMatchSkills online program and database; occupational skills trainings, classes, and workshops; testing to qualify for higher-level jobs; and meetings with recruiters and career counselors. (*See* Ptf's Ex 1.) Plaintiff testified that she would arrive at the WorkSource office at 8:00 a.m.; she was required to dedicate six hours per day to her job search, but would typically stay for seven or eight hours because she would have to wait for recruiters to arrive. She testified that, in addition to her motivation to gain employment, participation in WorkSource and her active job search was a requirement to receive unemployment benefits. Plaintiff testified that she asked WorkSource for records to establish the dates and hours that she checked in, but was told those records could not be provided.

/ / /

Plaintiff testified that, during the time that she was unemployed in 2010, she would interview for jobs whenever possible. She testified that interviews were conducted both by telephone and in person, estimating that she attended approximately 80 interviews in 2010. In support of her testimony, Plaintiff provided handwritten notes detailing some, but not all, of the employers that she contacted; the notes identify 98 contacts. (Ptf's Ex 4.) She testified that some, but not all, contacts resulted in interviews. Plaintiff testified that she attended a few job interviews in August and September 2010 while she was employed part time. She provided handwritten records indicating that she attended job interviews on August 14, 2010, August 21, 2010, and during the first week of September 2010. (Ptf's Ex 5.) Plaintiff also provided her resume and two letters of recommendation from previous employers. (Ptf's Ex 6.) She testified that she did not save rejection letters and does not have any additional evidence indicating the specific dates and times that she attended job interviews.

Plaintiff testified that, in 2010, she had one son, Lawren, who was three years old. She testified that Cheryl Clark (Clark) provided child care for Lawren in her home in 2010 along with several other children. Plaintiff testified that she paid Clark in cash in 2010, because that was Clark's preference; she previously paid Clark by check. Plaintiff provided receipts for "child care" signed by Clark that are all dated in 2010; the receipts total $6,965. (Ptf's Ex 7.) Plaintiff testified that she typically paid Clark twice per month, but Clark would issue receipts around the end of each month. Plaintiff testified that Clark had been Lawren's child care provider in prior years and that she did not want to alter Lawren's environment because he is autistic and it would have been difficult for him.

Cole questioned Plaintiff's testimony that she paid Clark in cash, noting that bank statements provided by Plaintiff to Defendant with her written objection include "draft"

numbers. (*See, e.g.*, Def's Ex B at 5.) Plaintiff confirmed that "drafts" refer to checks. She testified that she is not sure which "drafts" are checks to Clark for child care and which are checks withdrawing cash for child care payments. Plaintiff testified that she contacted her bank to request copies of each draft, but the bank's fee of $2 per copy was cost prohibitive for her. She testified that she did not consider the draft copies necessary given that she provided receipts.

Clark did not testify at trial, but Cole testified that he spoke with Clark on the telephone prior to trial. Cole testified that Clark confirmed that she provided child care for Plaintiff's son in 2010, and that she issued receipts to Plaintiff. Cole testified that Clark reported having hip surgery in December 2010, and that she did not continue to provide child care after that time. Plaintiff confirmed that Clark no longer provides child care for Lawren and that the last payment she made to Clark for child care was January 2011.

Cole testified that, according to Clark, some of Plaintiff's child care payments were made by "DHS," not Plaintiff, but she could not recall how many or the amount of those payments, stating that she would have to check her records. Cole testified that he specifically asked Clark about the 2010 tax year. Plaintiff testified that "DHS" paid for her child care in April and May 2009 when she was getting divorced and participating in a battery advocate program provided by the State of Oregon. She testified that those two months were the only times that she has ever received benefits from "DHS." Plaintiff testified that she spoke with Clark on May 8, 2012, (the day before trial) and Clark stated that she has "a lot of DHS kids" and that she "cannot keep it all straight." Plaintiff testified that Clark stated that her recollection of 2010 is poor and that is why she did not want to testify at trial or submit any information to Defendant.

Patrick testified that Plaintiff was actively seeking employment and participating in interviews in 2010 when she was not employed and that Clark provided child care for Lawren.

Patrick testified that, several times each month, she would drop Lawren off or pick him up from Clark's house so that Plaintiff could attend an interview. (Ptf's Ex 8 at 3.) Plaintiff provided additional letters from friends and neighbors in support of her testimony. (*Id.* at 1-2.)

## II. ANALYSIS

The issue before the court is whether Plaintiff is entitled to a WFC and CDC for the 2010 tax year based on claimed child care payments totaling $6,965. ORS 315.262 provides a refundable credit, the WFC, for qualifying taxpayers to partially offset child care costs incurred while taxpayers are working, attending school, or "seek[ing] employment."[1] ORS 315.262(3) states in part: "A qualified taxpayer shall be allowed a credit against the taxes otherwise due under ORS chapter 316 equal to the applicable percentage of the qualified taxpayer's child care expenses * * *." "[T]he [WFC] is limited to costs associated with child care" and such costs "must be made by the parent claiming" the WFC. OAR 150-315.262(3).

ORS 316.078 provides a nonrefundable credit, the CDC, for certain "employment-related expenses," including child care, paid by a taxpayer for the care of a dependent child or children. The CDC is specifically tied to IRC section 21. The CDC is "equal to a percentage of employment-related expenses allowable pursuant to section 21 of the Internal Revenue Code * * *." ORS 316.078(1); *see also* OAR 150-316.078(1) ("When calculating the Oregon child care credit, taxpayers must use the same employment related expenses used for calculating the federal credit, subject to the same limitations and eligibility requirements outlined in the IRC Section 21."). IRC section 21(a)(l) provides a credit for a "percentage of the employment related expenses * * * paid by such individual during the taxable year."

/ / /

---

[1] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

"Expenses are employment-related expenses only if they are for the purpose of enabling the taxpayer to be gainfully employed. The expenses must be for the care of a qualifying individual or household services performed during periods in which the taxpayer is gainfully employed *or is in active search of gainful employment.*"

Treas Reg 1.21-1(c) (emphasis added).

Plaintiff has the burden of proof and must establish her case by a "preponderance" of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence * * *." *Feves v. Dept. of Revenue,* 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [her] burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

The court found Plaintiff to be very credible. Although her records relating to her job search lack some of the specificity and detail desired by Defendant, the court is persuaded that Plaintiff was "actively seeking employment" or "gainfully employed" during the 2010 tax year. The court is also persuaded that Plaintiff incurred child care expenses of $6,965 for the purpose of allowing her to work and seek employment. Plaintiff provided clear, signed receipts from Clark dated for 10 of 12 months in 2010. Although Clark did not testify, Cole testified that he spoke with Clark and that she confirmed that she provided child care for Lawren in 2010 and that she issued receipts to Plaintiff. Cole testified that he does not question that Clark provided child care for Lawren and presented no evidence suggesting that the receipts for child care are false or inaccurate. The court is also persuaded, based on Plaintiff's testimony and the lack of evidence to the contrary, that none of the 2010 payments for child care were made by "DHS."

/ / /

/ / /

/ / /

III.  CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that Plaintiff incurred child care expenses of $6,965 while "actively seeking employment" or "gainfully employed" during the 2010 tax year.  Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2010 tax year, Plaintiff is allowed a WFC and CDC based on child care expenses of $6,965.

Dated this ____ day of August 2012.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on August 3, 2012. The Court filed and entered this document on August 3, 2012.*